McClure v. Campbell.

IV.

McClure, Appellant, v. Campbell.

Division One, February 15, 1899.

1. **Fraud: DECEIT: CONTRACT: MECHANICS' LIEN.** Defendant leased certain land to W. for ninety-nine years, at an annual rental of $12,000 and gave his receipt for the first year's rent, upon the further agreement that W. should erect two buildings on the land to cost $75,000, and if W. did so before a specified date, and produced a receipt from the architect that the buildings were reasonably worth that sum, and also produce vouchers showing that all claims for work, labor and materials were paid, and that the buildings were free from mechanics' liens, the defendant would repay W. $25,000 that day deposited with him. The defendant signed a receipt acknowledging the deposit in his hands of the $25,000, and containing the condition that no part of the said sum was to be used in completing the building, and that no contractor, laborer or materialman should have any claim upon it for any reason or purpose. Plaintiff saw and fully understood the receipt, and was told by the defendant that the $25,000 had been actually deposited with him, which was wholly untrue. Thereupon plaintiff entered into contract with W. for the building of the houses for $65,685, and after the work had been begun the architect ordered it stopped on the pretense that the buildings would cover nearly six feet more than the vacant lot. The work was never resumed. Plaintiff sued for $3,400 for work done and liabilities incurred, and $6,500 the amount his profits would have amounted to, and alleged, as the basis of his action that W. was a mere adventurer, that the receipt and contract of lease were intended by defendant to give W. a false and fictitious credit in the community, that defendant's purpose was to have the buildings erected without being personally responsible, and without rendering his real estate liable

to mechanics' liens, and that he was induced to enter into the contract on defendant's assurance that the $25;000 was actually deposited as a security or indemnity that the final payment on the construction should be paid to the contractors and materialmen. *Held*, that plaintiff could not recover.

2. **Practice:** DEMURRER TO EVIDENCE: GIVING INSTRUCTION: EXCEPTION. The action of the court in giving an instruction is a matter of exception, and is not open to review on appeal unless exceptions thereto are saved in the bill of exceptions.

3. ———: ———: NONSUIT: VOLUNTARY. Until an instruction is given in writing there is no such adverse ruling of the court as precludes a recovery by plaintiff. So that where defendant demurred to plaintiff's evidence, and the court announced that it would grant such instruction, and plaintiff thereupon asked leave to take a nonsuit with leave to move to set the same aside, such nonsuit was voluntary.

*Appeal from St. Louis City Circuit Court.*—Hon. THOMAS A. RUSSELL, Judge.

AFFIRMED.

LEE W. GRANT for appellant.

(1) In an action for damages for deceit the plaintiff must allege and show: First. That the representation was untrue. Second. That it was known by the defendant to be untrue. Third. That it was calculated to induce the act of plaintiff. Fourth. That plaintiff, believing it, was induced to act to his detriment. Bullitt v. Farrar, 6 L. R. A. 149. (2) The representation that Whistler had deposited $25,000 as a security that there should be no claims against the building when completed, and that the same would be available for payment of the last instalment due the creditor on the completion of the building, was a representation of an existing fact, which representation was untrue and known to be untrue at the time. Newland Hotel Co. v. Tiernan, 8 Mo. App. 596; Bullock v. Wooldridge, 42 Mo. App. 356; Franklin v. Holle, 7 Mo. App. 241; Scott v. Haynes, 12 Mo. App. 597. (3) The representations of Reed, Campbell's agent, in charge of his affairs in his absence, are binding upon his principal.

Robinson v. Walton, 58 Mo. 380. (4) It is not necessary that a contractual relation should exist between plaintiff and defendant. Barnes v. McMullins, 78 Mo. 275; Ferris v. Shirley, 60 Mo. App. 621; Arthur v. Mfg. Co., 12 Mo. App. 335. (5) The act of deceit was calculated to induce the action of plaintiff. The financial responsibility of Whistler was unknown. He had induced Campbell to execute a leasehold on valuable property for a long term of years for a large rental. Campbell had executed receipts for $25,000 and $12,000, and the solvency and good faith of Whistler was shown forth to the building fraternity by the exhibition of such documents. Campbell had suggested alterations on the plans and had finally approved them in writing. He knew that contractors were bidding on the job. McClure would have been justified in a suit for deceit against Campbell if he had omitted the personal interview. But he went further. Taking his financial backer, he informed Campbell's agent that he was ready to sign the contract if everything was all right, but would not do so until he was assured by Campbell's authority that the sums represented by the receipts had been actually deposited in cash. This assurance was given, and more. Thereupon he signed the contract. Davidson v. Hobson, 59 Mo. App. 130; McBeth v. Craddock, 28 Mo. App. 380; Hamlin v. Abell, 120 Mo. 188.

GEORGE W. TAUSSIG for respondent.

(1) No objection having been made or exception taken to the action of the court in giving the instruction of nonsuit, any error committed by the trial court in that respect must be considered waived. St. Joseph v. Ensworth, 65 Mo. 628; Waller v. Railroad, 83 Mo. 608; Danforth v. Railroad, 123 Mo. 196; State v. Kennade, 121 Mo. 405; Wentzville Tobacco Co. v. Walker, 123 Mo. 662; McAnaw v. Matthis, 129 Mo. 142; Hanniford v. City of Kansas, 103 Mo. 172; 8 Am. and Eng. Ency. of Practice, 293; Ross v. Railroad, 141 Mo.

390; State v. Hilsabeck, 132 Mo. 360; Evans v. Trenton, 112 Mo. 390; Malone v. Beardsley, 93 Cal. 150. (2) That appellant made the giving of the instruction a ground for his motion to set aside the nonsuit does not give this court the right to consider such alleged error. Where no objections are made and exceptions saved at the time of the giving of the instructions the appellate court will not review such instructions. Gordon v. Gordon, 13 Mo. 215; Nall v. Railroad, 97 Mo. 68; State v. Reed, 89 Mo. 166; State v. Bosler, 119 Mo. 417; Waller v. Railroad, 83 Mo. 608; State v. Hayden, 61 Mo. 662; State v. Myers, 99 Mo. 107; State v. Rambo, 95 Mo. 462; Chouteau v. Rowse, 90 Mo. 195. So far as the record shows the nonsuit was voluntary and not compulsory; it was neither objected nor excepted to. Danforth v. Railroad, 123 Mo. 196.

LEE W. GRANT for appellant in reply.

In all of counsel's practice he has never heard an attorney except to the action of the court in giving or refusing an instruction to the jury. Nor has he ever heard of any attorney doing such a thing in the courts of this State. Of course, this is usually inserted in the bill of exceptions as a matter of form. It would seem as if this court had gone far enough in holding that the record should show that a party has excepted at the time to the action of the court in actually giving an adverse instruction to the jury without going to the extreme length of holding that the bill of exceptions must say that he excepted at the time to the giving of the instruction, when in truth, the court never reached the point of actually giving the instruction to the jury.

MARSHALL, J.—The material allegations of the petition are these: Plaintiff is a builder and contractor; defendant was during the year 1895 the owner of the following described real estate in the city of St. Louis: "in City block No. 520 of said city and State, and lying on the north line of

Washington avenue, 146 8-12 feet west of Thirteenth street, thence west 146 feet and 11 1-3 inches, thence north parallel with the east line of the Finney tract 133 feet, to south line of Lucas avenue, thence east to a point on the south line of Lucas avenue 119 7-12 feet west of Thirteenth street, thence south and parallel to the east line of Finney tract to point of beginning," said property being unimproved; that about the first of May, 1895, defendant conceived the idea of having the property improved without being personally responsible for the expense and without rendering the real estate liable to mechanics' liens; that in pursuance to that intent defendant entered into an agreement with one W. J. McBride, by which he agreed to pay McBride a large sum of money if he would obtain a lessee who should obtain a responsible bidder to erect a building on the premises according to plans to be approved by defendant; that McBride procured one Ensley O. Whistler, who was known to defendant to be an impecunious and irresponsible adventurer from Chicago, who agreed with defendant to lease the premises at a rental of twelve thousand dollars a year, and to erect a bachelor apartment house to cost about sixty-five thousand dollars, and the lease was accordingly executed to Whistler, and defendant caused it to be circulated among the real estate men and builders that Whistler had paid him twelve thousand dollars for the first year's rent, in advance, and had paid him twenty-five thousand dollars, in cash, "as a security or indemnity that the final payments on the construction should be paid to contractors and material men;" that defendant gave Whistler receipts for said sums of money "with intent that said Whistler should exhibit said receipts to contractors and builders to create confidence in said Whistler as a man of means and ability to carry out any contract he might make for the erection of said building;" that Whistler exhibited the receipts and claimed he had made the deposits; that Whistler caused plans to be prepared for the building, which were approved by defendant; that "having

been informed that said sums of twenty-five thousand dollars and twelve thousand dollars were actually deposited in cash with said Campbell for the purposes hereinbefore set forth," plaintiff bid for the construction of the building, and was awarded the contract, but before signing the contract and for the purpose of verifying the deposit and payment stated, he applied to defendant's general agent, the defendant himself being absent from the city of St. Louis, and was informed that the deposit and payment had actually been made, and that upon this "assurance" he signed a contract for the construction of the building, for $65,685, proceeded to order materials for the building, made the excavation for the foundation, but that it was then discovered that defendant did not have sufficient land, by about five feet, on which to construct such a building as was contemplated by the plans, and thereupon the architect ordered the work stopped, Whistler abandoned the work of construction and returned to Chicago; that plaintiff then ascertained that Whistler was financially irresponsible and "had been relying on obtaining a loan on his leasehold for the first payments for said work, and on said Campbell who had promised to pay the last twenty-five thousand dollars required for the construction," but that Whistler had been unable to borrow any money on the leasehold; that plaintiff then learned from defendant's agent (defendant being still absent from St. Louis), that said sums of money had not been paid or deposited by Whistler with defendant, and plaintiff therefore charges the fact to be that the receipts were given to Whistler to give him a false and fictitious credit and to enable him to thereby induce contractors to enter into contracts for the construction of the building; that plaintiff's contract with Whistler provided that when the third floor joists were laid a payment of $20,000 was to be made; that plaintiff did work and incurred liabilities for materials amounting to $3,400, and that his profits on the job would

have amounted to $6,500, and he asked a judgment for $9,900.

The answer is a general denial.

The evidence introduced by plaintiff in support of these allegations was that defendant executed a ninety-nine year lease on the premises to Whistler at a yearly rental of $12,000, the lessee agreeing to erect two buildings, to cost not less than $75,000, according to plans to be aproved by defendant; that defendant agreed to pay McBride $25,000 as commissions for effecting the lease, when the buildings were completed; that defendant gave Whistler a receipt for the first year's rent, and also a receipt and agreement, which Whistler's attorney had prepared, in the folowing form:

"I, James Campbell, of the city of St. Louis, in the State of Missouri, hereby certify and acknowledge that Ensley O. Whistler, of the same place, has this day deposited with me the sum of twenty-five thousand dollars in lawful money of the United States of America for the following purposes, to wit:

"Whereas, by an indenture of lease, dated this first day of June, 1895, I did demise and lease unto the said Ensley O. Whistler for the term of ninety-nine years from and after the first day of June, 1895, upon the terms and conditions therein mentioned and recited, the following described premises situated in the city of St. Louis, in the State of Missouri, to wit: . . . . . . . .

"And Whereas, as one of the covenants and conditions of said lease, it is provided that the said Ensley O. Whistler shall erect upon said premises two substantial brick buildings, one at least five stories and basement in height, and one at least three stories in height, to cost together not less than seventy-five thousand dollars, and shall have said buildings completed and ready for occupancy on or before the first day of January, 1896, and free from mechanics', laborers', materialmen's and all other liens for work and labor done upon, and material furnished to, said buildings.

"And, Whereas, said deposit of said sum of twenty-five thousand dollars has so been made with me by said Ensley O. Whistler for the purpose of assuring and guaranteeing to me, my heirs and assigns, the faithful performance and fulfillment by the said Ensley O. Whistler, his heirs or assigns, of the aforesaid covenant and condition.

"Now, Therefore, if the said Ensley O. Whistler, his heirs, or assigns, shall, on or before the first day of January, 1896 (strikes and unavoidable accidents excepted), have erected on the hereinbefore described premises two buildings as hereinbefore mentioned and referred to, and in accordance with plans and specifications now approved by me, and shall, on or before said date (strikes and unavoidable accidents excepted), have said buildings completed and ready for occupancy; and when architect or architects of said buildings shall have certified that the reasonable cost of said buildings, when completed, is not less than seventy-five thousand dollars, and when proper vouchers of the contractors and all sub-contractors for work and labor done upon, and materials furnished to, said buildings, when completed, shall have been exhibited by the said Ensley O. Whistler, his heirs, executors, administrators or assigns, and when an architect, to be employed by me, shall be satisfied that said buildings have been erected and completed in accordance with the plans and specifications aforesaid, and that said buildings are free from mechanics', laborers', materialmen's and all other liens for work and labor done upon, and furnished to, said buildings, then and in the events aforesaid, I, or my heirs, executors, administrators or assigns, will, and I do hereby promise and agree to, repay said sum of twenty-five thousand dollars, in lawful money of the United States of America to the said Ensley O. Whistler, or his heirs, executors, administrators or assigns, immediately upon demand made therefor by him or them,

"But in the event of the non-performance and the non-fulfillment in any wise of the aforesaid covenant and condition by the said Ensley O. Whistler, his heirs or assigns, as

hereinbefore recited, and within the time hereinbefore in that behalf mentioned (strikes and unavoidable accidents excepted), then said sum of twenty-five thousand dollars shall belong to me as my absolute property, and as liquidated damages. and not as a penalty or in the nature thereof, for such non-performance and non-fulfillment of said covenant and condition.

*"It being distinctly understood and agreed that neither said sum of twenty-five thousand dollars, nor any part of it, is to be used by me in completing said buildings, or either of them, and that no contractor, laborer, or materialmen, or any person or party, shall have any right to, or claim upon, said sum of twenty-five thousand dollars or any part of it for any reason or for any purpose whatever.*

"Witness my hand to duplicate and originals hereof at the city of St. Louis, State of Missouri, this first day of June, A. D. 1895

James Campbell, by<br>W. F. Reed,<br>His attorney in fact.

"Witness:

W. S. Corcoran.

I consent to all of the foregoing.

Witness:                                    Ensley O. Whistler.

Montague Lyon."

The last paragraph of the document, being the part italicized, was added by defendant's attorney, Judge Madill, before it was signed.

After Whistler got the lease and receipts, he and McBride, the architect and the plaintiff met at the architect's office and they were read aloud, and plaintiff also read them; but before plaintiff signed the building contract he and Mr. Ferguson, the president of the Mechanic's Bank, went to defendant's office and saw his agent and plaintiff told him he was about to sign the building contract, but wanted to know if the $25,000 was actually deposited, and defendant's agent said it was, and then plaintiff entered into the·building contract and began work under it, but after the work had progressed a few days the architect had a survey made of the land

and ascertained that the building would cover five feet and eleven inches more than the vacant land, and there was a three story brick building which stood partly on that five feet and eleven inches which would have to be taken down before the building contemplated by the plans could be erected, and thereupon the architect ordered the plaintiff to stop work and the plaintiff did so, and it was never resumed.    Afterwards the plaintiff saw defendant's agent and learned that no money had been deposited by Whistler and no rent had been paid, but that the rent for the first year had been forgiven by defendant.    Plaintiff relied upon the statements of defendant's agent, although he admitted that he knew that under no circumstances could he ever have any benefit out of the $12,000 that the receipt showed had been paid for the first year's rent, and although he had read and understood the receipt and agreement about the $25,000, and that it expressly provided that neither the $25,000, nor any part of it was to be used by defendant in completing the building, and that no contractor, laborer or materialmen, or any person or party was to have any right to or claim on the same or any part of it for any reason or for any purpose whatever, but that it was to be returned to Whistler only on condition that he erected, complete, on the premises the structures contemplated before the first day of January, 1896, and that the architects certified that they had reasonably cost seventy-five thousand dollars, and that Whistler produced proper vouchers from all contractors and sub-contractors showing that all work and labor and materials had been paid for and that the buildings were free from all mechanic's liens.    The ninety-nine year lease and the building contract were read in evidence by plaintiff, and evidence was introduced as to the damages, and then plaintiff rested.    The following proceedings were then had:    "The defendant thereupon asked the court to instruct the jury that the plaintiff was not entitled to recover, which instruction is in words and figures as follows:    'The court instructs the jury

that under the evidence herein the plaintiff is not entitled to recover.' And the court having announced that he would grant such instruction, the plaintiff thereupon asked leave to take a nonsuit with leave to move to set the same aside, which the court granted; and on the —— day of ——, 1896, and within four days from the termination of said trial, as aforesaid, the plaintiff filed his motion to set aside said nonsuit so entered and for a new trial, which motion is in words and figures as follows:

" 'Now comes the above-named plaintiff and moves the court to set aside the nonsuit entered in this cause, and to grant plaintiff a new trial for the reasons following:

" '1st. The court erred in its declaration of law made at the request of the defendant.

" '2d. Because the evidence by the plaintiff sustained the issue on plaintiff's part to be sustained.

" '3d. Because upon the pleadings and the evidence a good cause of action was stated and proved against the defendant.'

"Which said motion the court on the —— day of ——, 1896, overruled, to which ruling and order of the court the plaintiff then and there excepted at the time. He therefore prays the court to allow and sign this bill of exceptions, and that the same may be signed and sealed and made a part of the record, which is done this 15th day of August, 1896." Plaintiff then appealed to this court.

## I.

The gist of this case is that defendant leased certain land in the city of St. Louis to Whistler for ninety-nine years, at an annual rental of twelve thousand dollars, and gave him a receipt for the first year's rent, upon the further agreement that Whistler should erect two buildings on the land, to cost seventy-five thousand dollars, and if Whistler did so before a specified date, and produced a certificate from the

architect that the buildings were reasonably worth the sum specified, and also produced vouchers from all contractors and sub-contractors showing that all claims for work and labor and materials were paid and that the buildings were free from mechanics' liens, the defendant would pay Whistler twenty-five thousand dollars, but that neither said sum nor any part of it was to be used in completing the buildings, and that no contractor, laborer or materialmen or any person or party was to have any right to or claim upon that sum or any part of it for any reason or any purpose whatever. After getting the receipt for the rent and the contract aforesaid, Whistler showed it to plaintiff, who after reading it, went to defendant's agent and asked if the twenty-five thousand dollars was actually deposited, and being so informed, he entered into a contract with Whistler to erect the buildings for $65,685, and began work, when it was discovered by the architect that there was not unimproved land enough on which to erect the building, and that to do so it would be necessary to tear down five feet and eleven inches of a three story building that stood on the west of the unimproved part of the land. The architect then ordered the work stopped, and it was never resumed.

It is difficult to comprehend upon what legal theory the plaintiff expected to recover in this action. It is designated in the brief to be an action of deceit, and in the petition it is charged that the issuance of the receipt and contract was intended by defendant to give Whistler a false and fictitious credit in the community, and that the statement or "assurance" of defendant's agent that the twenty-five thousand dollars was actually deposited with defendant, "as a security or indemnity that the final payments on the construction should be paid to contractors and materialmen," induced plaintiff to enter into the contract, and caused damage to him.

Plaintiff admits that he had read and understood both the receipt for the rent, and the agreement as to the twenty-five thousand dollars. He says he knew that he could never

derive any benefit out of the twelve thousand dollars paid, or purporting to have been paid, for the first year's rent. He admitted on the trial that there was nothing in the contract which provided that the twenty-five thousand dollars was to be, "as a security or indemnity that the final payments on the construction should be paid to contractors and materialmen," but that on the contrary it was expressly provided in the agreement that no part of that sum was to be paid for completing the buildings and that no contractor, laborer or materialman was to have any right to or claim upon it for any reason or for any purpose whatever.

It can make no possible difference to the plaintiff whether Whistler paid defendant twelve thousand dollars for the first year's rent or not. Defendant owned the land and had a perfect legal right to lease it for any sum he could get for it, or to lease it for nothing or to forego any rent that he might have been entitled to under the lease. Such a transaction could not give Whistler any false or fictitious credit in the community. Receipts for money paid or for debts paid or discharged are convenient things to have, but they are not available assets upon which to hinge commercial credit, for under execution they would not sell for enough to satisfy a claim however small. This feature of the case may therefore be dismissed from further consideration, as it is self-evident that plaintiff was not either induced to enter into the contract or caused to lose anything, in consequence thereof.

The evidence introduced by the plaintiff wholly fails to establish the allegations of the petition that the twenty-five thousand dollars was deposited with defendant "as a security or indemnity that the final payments on the construction should be paid to contractors and material men." On the contrary the agreement which plaintiff read and understood before signing the building contract expressly provided that it was not to be so used, and that no contractor should have any right to it or to any part of it, "for any reason or for any

purpose whatever," and that Whistler was not to get it unless by a time specified he completed the buildings, produced proper vouchers from all contractors and sub-contractors and showed that the building was free from all mechanics' liens, and showed the certificate of the architect that the buildings reasonably cost $75,000.

The plaintiff therefore knew, or is charged in law with the knowledge, that Whistler never would become entitled to demand the twenty-five thousand dollars, for he knew that his contract with Whistler called for two buildings to cost only $65,685, which was $9,315 less than the value of the building Whistler contracted with defendant to erect, and hence that the architect, who was aware of plaintiff's contract with Whistler, could not certify that the buildings cost reasonably $75,000. He also knew that under the terms of the contract Whistler could not compel defendant to pay the $25,000 until the buildings were completed and all paid for and free from mechanics' liens. This would involve the expenditure of seventy-five thousand dollars by Whistler before he could demand anything from defendant. It requires more discernment than courts possess to see how these facts and conditions could give Whistler any real or false credit in the world. To an ordinary mind the fact that a man had already lost present dominion over thirty-seven thousand dollars would suggest the inquiry as to what else he had, what other means were in his power to meet other indebtedness, rather than to create the impression that if he had put up so much money in one place, that he must have great resources left.

If the plaintiff believed that he would be subrogated in equity to Whistler's right to the $25,000 when the building was completed and all the conditions were complied with, as he would have been entitled, still the present dilemma suggested itself, where was Whistler to get the means or did he possess the means to place himself in a position where he would be entitled to demand the $25,000 from defendant?

The plaintiff's contract called for a payment from Whistler of $20,000 when the third story joists were laid. The first question therefore which would naturally present itself to the mind of any one was, how will Whistler be able to pay that sum? A few pertinent inquiries and some amount of investigation as to Whistler's ability to perform the conditions precedent upon his part, before the $25,000 could be considered an asset, were essential and necessary, and would have prevented any loss to the plaintiff. It is therefore immaterial whether the $25,000 was deposited by Whistler with defendant or not, for the defendant had made himself liable to Whistler for that amount upon the performance of the contract by Whistler, and at the instance of Whistler's creditors to be subrogated to his rights the defendant would not be heard to say no money had been so deposited. If therefore the statements of defendant's agent were never so false, it can not be said that plaintiff relied on them or that they amounted to any "assurance" upon which any man had a right to rely, and hence the plaintiff's losses can not be attributed to such statements. The plaintiff must have relied upon the mechanic's lien laws, under which he could have had the building and the leasehold sold to pay his claim, or else he was guilty of the most reckless business venture that there is any record of. There was nothing in the defendant's contract upon which he could safely rely, except the right of subrogation in the contingencies herein pointed out, and that does not support a charge of fraud or deceit. The principles of law applicable to actions of fraud and deceit are so well established that any extended discussion of them here is not necessary. In fact there is no substantial difference between counsel in the case as to the law of the case. Their lines of divergence grow out of the application of the law to the admitted facts in the case as the record here presents them, for the plaintiff's side only is before the court.

The conclusion is irresistible that the allegations in the petition that the $25,000 was to be a security or indemnity

for the final payment to the contractors are not sustained by the proofs, and the evidence adduced clearly and conclusively establishes the fact that the issuance of the receipt and the execution of the contract was not intended to give Whistler any kind of credit, and could not possibly have any such effect, and that plaintiff could not sensibly have relied on these matters or upon the statements of defendant's agent, and that if he had relied on them he is not damaged in any way by them.

The petition charges and the proofs show that the work was stopped by order of the architect, because the contemplated building would have been larger than the unimproved land. In one place in the petition it is set out that defendant owned 146 feet and 11 1-3 inches on the north side of Washington avenue, and in another it is stated that to erect a building such as the plans called for it would have been necessary to tear down "more than five feet of a building on adjoining premises occupied by an owner other than Campbell," but the evidence does not disclose the size of the contemplated buildings, nor does it establish the averment that the five feet on which the adjoining building is located belongs to or is occupied by "an owner other than Campbell." Moreover this action is not founded upon a contract of the defendant to furnish a particular sized lot and a breach of contract in this respect. This evidence is useful only as showing that the work was stopped for this alleged reason, and not because plaintiff had been deceived into entering into the contract by the issuance of the receipt and contract or by the statements of defendant's agent.

In short, the plaintiff failed entirely to make out a case which entitled him to go to the jury.

## II.

At the close of the plaintiff's case, the defendant demurred to the evidence, the court "announced that he would

grant such instruction, the plaintiff thereupon asked leave to take a nonsuit, with leave to move to set the same aside, which the court granted." No instruction was in fact given, and no objection was made or exception saved by plaintiff to the announcement or action of the court. The plaintiff, in due time, filed a motion to set aside the nonsuit, the court overruled the motion, and plaintiff then duly saved his exception.

Such steps are all matters of exception and can only be made a part of the record by a bill of exceptions; unless they are so saved, the action of the court is not open here for review. [Reynolds v. Street Ry., 146 Mo. 126.]

It is insisted however that saving an exception to the overruling of the motion for a new trial is all that is necessary, and that the court had "settled" the instruction, although it had not actually given it, and therefore the nonsuit was involuntary. The case of Greene County Bank v. Gray, 146 Mo. 568, involved a record which was in all respects identical with the record in this case, and after a full examination of the question, BRACE, P. J., in speaking for the court, held that a nonsuit taken under such circumstances was voluntary, and hence there was nothing for this court to review. That case meets our views and we adopt it here and re-affirm the principles it announces. It does not alter the case that the court had "settled" the instructions. Until the instructions are given there is no adverse ruling of the court which finally precludes a recovery by the plaintiff, for the court is required by section 2188, R. S. 1889, to "give" or "refuse" the instructions in writing asked by the parties or may give instructions of its own motion. Until the court so acts there has been no ruling or action of the court, with respect to instructions, no matter what announcements the court may have made of its intention.

The judgment of the circuit court is therefore affirmed.

All concur in the first point, and all concur in the second point except VALLIANT, J., who dissents as to that point.