NATIONAL LIVE STOCK COMMISSION COMPANY, Plaintiff, Appellant and Respondent, v. W. F. THERO, Defendant, Appellant; F. J. DALBY, Interpleader, WILLIAM FLOWERS, Interpleader, Respondents.

**Kansas City Court of Appeals, March 6, 1911.**

1. **TRIAL PRACTICE: Interpleas: Non-Suit.** Interpleaders have a right, under the Code (sec. 198, R. S. 1899), sec. 204, R. S. 1909, to take a non-suit at any time before their cases are submitted to the jury, and where they do so voluntarily, there being no adjudication, they may interplead anew.

2. **ATTACHMENT: Trust Fund.** An agreement that the proceeds of the sale of cattle shall be applied, by the commission company selling the same, to the payment of drafts drawn on the company by the interpleaders for the purchase price of the cattle remaining unpaid, the drawee being a party thereto, is valid and invulnerable to the attacks of creditors, in the absence of any fraud in the transaction.

3. **CONTRACTS: Contemporaneous Agreements: Consideration.** All prior and contemporaneous verbal agreements are merged in the written contract executed at the time by the parties to the contract, and therefore any verbal agreement, made at the time of the execution of notes, changing the written terms thereof as to the date when they become due, is void.

4. ———: **Subsequent Agreements.** Subsequent oral agreements varying the terms of a written contract are void, unless supported by a new consideration, but promissory notes cannot be varied by extraneous oral agreements.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Botsford, Deatherage & Creason* for plaintiff appellant and respondent.

*Jamison, Hutchinson & Ostergard* and *George N. Elliott* for defendant-appellant and interpleaders-respondent.

BROADDUS, P. J.—The plaintiff's suit is to recover on two promissory notes executed by defendant. One was for $1523.94, and the other for $50. The plaintiff sued out a writ of attachment alleging as ground therefor, that defendant was a non-resident.

Rice Brothers were summoned as garnishees who answered that they had in their hands $2000 belonging to the defendant, Thero, as the proceeds of the sale of certain cattle shipped by defendant to them and sold by them at the Kansas City Stock Yards; that the sum mentioned was due at the time of the garnishment. And further answering the garnishee stated that: "At the time of the service of the garnishment, garnishee had notice from the First National Bank of Stamford, Texas, that there were drafts that amounted to about thirty-four hundred dollars on these six cars of cattle. This notice was received by wire June 29, 1907, and after service of garnishment, garnishee wired to first National Bank, Stamford, Texas, as follows: 'No funds or cattle here when draft presented. National Commission Company attach proceeds this shipment." Rice Brothers paid the $2000 into court, less fifty dollars allowed them as expenses for answering and they were discharged from the proceedings.

On December 20, 1907, F. J. Dalby filed his interplea claiming $635 of the said fund. And among other matters reciting that he was one of the parties referred to in the answer of the garnishee, being the owner of a draft for $635 included in the drafts amounting to $3500 in the hands of the First National Bank of Stam-

ford, Texas, drawn by defendant Thero, on said Rice Brothers.

The, "interpleader further avers that the said draft so held by him, was given as the purchase price of part of said six car loads of cattle, in said answer referred to, with the distinct understanding, contract and agreement between the interpleader, the said Thero and the said Rice Brothers Commission Company, that said draft should, by the said company, be paid out of the proceeds of the said six car loads of cattle, when sold by the said Rice Brothers Commission Company, who had agreed with the said Thero to pay said draft out of such proceeds, which agreement, on the part of the said Commission Company, had been communicated to the said F. J. Dalby, at the time of the sale of the said cattle, and at the time of the receipt of said draft therefor.

"That the said Dalby accepted the said draft for the payment of a part of the said six car loads of cattle, relying upon the agreement of the said Rice Brothers Commission Company to pay the said draft, as aforesaid, out of the proceeds of the sale of said cattle," etc.

On the same day interpleader William Flowers filed his interplea describing a draft made payable to him by defendant for $362.50, and alleging also that by agreement of defendant, the commission company and himself, that the draft should be paid by the company out of the proceeds of the sale of said six car loads of cattle, when sold by the consignee and that said agreement was made prior to the sale of said cattle to the said Thero; and that he accepted said draft relying on said agreement, etc.

The plaintiff filed a general denial to each of said interpleas.

There was a separate trial before the court and jury on each interplea. At the close of the respective trials the court announced that it would give a peremptory

instruction to find for the plaintiff, whereupon the interpleaders took non-suit with a leave to set aside.

Afterwards each interpleader was allowed over the objections of the plaintiff to file "another and amended interplea."

The amended interpleas were substantially the same as the former ones, only they were made more specific, and alleging that there were ten loads of the cattle instead of six. The answer to each of these new interpleas was a general denial and setting up the first trial and non-suit in bar.

The new interpleas were consolidated and tried by the court as an equity proceeding and the finding and judgment was in favor of the two interpleaders and the plaintiff appealed.

It is sufficient to say without recapitulation, that the evidence fully sustained the allegations of the interpleas, and the only question before the court, is, whether the judgments under the allegations of the interpleas and the evidence sustaining them were for the right parties.

We will first dispose of the preliminary question raised as to the right of the interpleaders after taking a non-suit to file other or amended interpleas. The interpleaders had the right under the code to take a non-suit at any time before their cases were submitted to the jury. [R. S. 1899, sec. 198.] The recitation in the record that the interpleader took involuntary non-suit did not make it such. It is said that: "To simply call it by that name will not make it involuntary." [Green County Bank v. Gray, 146 Mo. l. c. 571; Carter v. O'Neill, 102 Mo. App. 391.] Until the court had given a peremptory instruction to find for plaintiff there was no such ruling as precluded the interpleaders recovery. The announcement by the court that it would find for the plaintiff on the evidence and interpleader thereupon taking a non-suit with leave to set it aside, such non-suit is voluntary. [Green County Bank v.

Gray, supra; Carter v. O'Neill, supra; McClure v. Campbell, 148 Mo. 96.] Consequently, there was no adjudication, and the interpleaders had the right to interplead anew.

Under section 2345, Revised Statutes 1909, "any person claiming property, money, effects or credits attached, may interplead," etc. And it is held that an interpleader under this statute must stand in the same plight as if he were the plaintiff in an action of replevin. [Spooner v. Ross, 24 Mo. App. 603.] And it is contended as the interpleaders could not recover in an action of replevin for the cattle sold by them to Thero for which the unpaid drafts were given, they cannot recover on their interpleas. If the interpleas were statutory, perhaps the position of plaintiff is sound, but as it is equitable and seeks to enforce an equitable right we do not think it is tenable.

And it may be conceded, that the claim of the interpleaders would not create a statutory lien upon the cattle sold by them to Thero, and it is not the purpose of the interpleas to assert such lien, as it must be admitted that the title in the cattle unconditionally passed to the purchaser at the sale made by Rice Brothers.

Although the interpleaders allege formally that they were the owners and assignees of a portion of the money in the hands of the garnishee, Rice Brothers, they further allege such facts as show that the fund was a trust fund in the hands of the garnishee out of which their drafts were to be paid. The transaction is not always to be characterized by the name which it is designated, but by what it imports to be. Terms are often misleading, and whether we characterize the transaction as an equitable assignment or by any other phrase, the whole question depends upon the application of rules of equity to the facts.

The agreement in short was, that, the cattle sold by interpleaders to Thero, were to be shipped to Rice Brothers to be sold on the Kansas City market; that

the proceeds of such sale should be applied by Rice Brothers to pay the drafts drawn on them by the interpleaders for the purchase price of the cattle remaining unpaid; and that Rice Brothers agreed to pay said drafts accordingly.

Before Rice Brothers accepted the drafts for payment the attachment was levied on the fund. In order to simplify the question it may be stated, that, the sale to Thero of the cattle was not a cash sale. The receipt of the drafts by the interpleaders was not a payment for the cattle, but as evidence of the indebtedness of Thero; and that the contract provided when and how the indebtedness should be paid, viz.: on the sale of the cattle by Rice Brothers, out of the proceeds realized from such sale. The provisions of the contract were reasonable and entirely legal and not a fraud on creditors. By the arrangement thus made, the interpleaders and Thero made Rice Brothers their agent to sell the cattle and devote the proceeds to the paying of the indebtedness. It was a mode devised for payment of the cattle out of the proceeds of their sale, and a part of the contract of sale. The effect of the agreement was to make Rice Brothers trustees of the fund, and apply it in payment for the cattle. It was an equitable pledge for the purpose of paying the most equitable claim to the fund and was not only binding upon the parties but invulnerable to the attack of creditors, except for fraud. And it could not be fraudulent, because it was to pay a just debt. Besides it was not attacked for fraud.

The question of equitable assignment has been argued at length by the respective parties, but we do not choose to discuss the matter from that standpoint, but to consider it as a part of the contract in the sale of the cattle and an appropriation of so much of the funds realized from such sale to the payment of the purchase money, an arrangement which no third party had the right to gainsay.

154 App—33.

The finding and judgment of the court on the interpleas is affirmed. All concur.

The defendant also appealed from the judgment on the notes in suit. As the case went off on demurrer to defendant's answer it is necessary to state substantially what it contains. It pleads that at the time of the execution of the two notes it was verbally agreed between plaintiff and defendant that defendant should pay the indebtedness described in the notes out of the proceeds of certain horses he then owned in Texas, and not otherwise, and that he should have time not to exceed sixty days from May 13, 1907, to do so; and that the fifty dollars was for money furnished defendant to pay his expenses in going to Texas to make the sale of said horses.

And for a further defense the answer alleges, that another verbal agreement was entered into between plaintiff and defendant subsequent to the execution of said notes, by the terms of which the notes were not to become due and payable until ninety days from their date, to be paid out of the proceeds of the sale of said horses in Texas; and that it was a part of the agreement that defendant was to pay his own expenses in excess of said fifty dollar note in about the business of selling said horses.

The plaintiff demurred to the answer which the court sustained, and as defendant stood on his demurrer and refused to further plead, judgment was rendered on the amount of said notes and interest, from which the defendant appealed.

The contention of the defendant is, that the court was in error. That the matters set up in said answer went to show want of consideration which is a competent legal defense. In this defendant is himself in error. Said matters do not tend to show want of consideration, but on the contrary show a consideration, that is to say, that the notes were given for money borrowed from plaintiff, but which were to be paid for

by money realized from a sale of certain horses defendant owned in Texas.

The matters pleaded in the first instance, set up a verbal contract made contemporaneous with the execution of the notes changing the written terms thereof as to the date when they were to become due, and that they were to be paid out of the proceeds of a sale of the Texas horses. In the first place this verbal contract conflicts with the recitations as to when the notes shall become due; and in the second place, it seeks to enforce a verbal agreement to the effect, that the notes were only to be paid out by money to be realized from the sale of said horses.

It is sufficient to say, that none of the matters go to the consideration of the notes, which is admitted to be for their respective sums mentioned, received in money from plaintiff by defendant, but to contradict the terms of the written instruments.

It is so well settled that all prior and contemporaneous verbal agreements are merged in the written agreement executed at the time by the parties to the contract, that nothing further need be said. The second part of the answer setting up a subsequent oral agreement varying the terms of the contract is without consideration; and further a promissory note cannot be varied by extraneous oral agreements. [Third National Bank v. Reichart, 101 Mo. App. 242.]

Affirmed. All concur.