## C. L. SCOTT, Appellant, v. AMERICAN ZINC, LEAD and SMELTING COMPANY, Respondent.

**Springfield Court of Appeals, January 30, 1915.**

1. **NEGLIGENCE: Must be Established: Never Presumed.** Negligence is never presumed but must be proven as any other fact and verdicts must have evidence to support them.

2. ———: **Proof: Circumstances and Conditions: Positive Proof.** In the establishment of negligence the peculiar surroundings of a given case are to be taken into consideration and also the difficulty of obtaining positive proof.

3. **APPELLATE PRACTICE: Peremptory Instruction: Inferences.** In passing on the action of the trial court in giving a peremptory instruction against plaintiff the appellate court will give him the benefit of every inference in his favor.

4. **MASTER AND SERVANT: Injuries: Negligence: Submission to Jury.** Action by servant against master for alleged negligence in furnishing an unsafe place in a mine in which to work. Evidence examined and *held* sufficient to warrant submission to the jury of the question whether the rock which caused plaintiff's injury fell from the roof of the mine or whether it rolled down the stope at the foot of which plaintiff was shoveling.

5. **TRIAL: Directing Verdict: Conflicting Evidence.** Because the denial on the part of the plaintiff that he made certain oral statements is contradicted by several witnesses for the defense in an action for personal injuries does not of itself sustain the court in directing a verdict against plaintiff.

6. **APPELLATE PRACTICE: Nonsuit: Defendant's Evidence Not Considered on Review.** Action for personal injuries. Trial court directed a verdict against plaintiff. In determining whether the court correctly ruled, the appellate court does not consider defendant's evidence.

7. **MASTER AND SERVANT: Injury in Mine: Proximate Cause of: Inference.** Action by servant for injuries, alleged negligence being failure of master to inspect and trim the roof of the mine in which servant was working. Evidence examined and considered sufficient to warrant the inference that the alleged negligence was the proximate cause of the injury.

8. **APPELLATE PRACTICE: Nonsuit: Voluntary: No Appeal from Refusal to Set Aside.** Plaintiff cannot appeal from the order of the trial court in refusing to set aside a nonsuit voluntarily taken.

9. **TRIALS: Nonsuit: Voluntary.** Where a peremptory instruction was given to find for defendant, to which plaintiff did not except, the nonsuit later taken was voluntary.

10. **———: Nonsuit: Voluntary: Involuntary.** Because appellant in his printed abstract denominates the nonsuit as "voluntary" does not make it such if the facts disclose that it was really involuntary.

11. **APPEAL AND ERROR: Record: How Made.** The record of a case, as to all matters that must be in the bill of exceptions, is made for the appellate court when the trial judge certifies that the transcript of the evidence and proceedings at the trial made up by the stenographer and agreed upon by the attorneys, is correct.

12. **———: ———: Diminution of Record.** The original bill of exceptions on file in a case cannot be amended in the appellate court. Where the printed abstract fails to show something which is shown by the bill of exceptions on file, a motion suggesting a diminution of the record is proper.

13. **———: Omission in the Record: Not Supplied by Rule on Stenographer.** The record in a case failed to disclose that the plaintiff excepted to a peremptory instruction directing a verdict for defendant. The appellate court will not entertain a motion for a rule directing the trial court stenographer to supply the exception alleged to have been taken but omitted from the record.

14. **TRIALS: Nonsuit: Involuntary: Refusing Instructions.** Where plaintiff presents correct and necessary instructions which are refused and which refusal the record shows, the action of the trial court forces him to suffer an involuntary nonsuit even though the record fails to show the giving of a peremptory instruction against him.

15. **TRIALS: Nonsuit: Voluntary.** A plaintiff's nonsuit is involuntary when taken after an adverse ruling has been made on

all requests for correct instructions, to which ruling he excepted. And a nonsuit is involuntary when taken after the court has made a ruling which precludes plaintiff from any substantial recovery. This includes rulings on both evidence and instructions.

16. TRIALS: Negligence: Liability: No Evidence of: Not to be Submitted to Jury. Error is committed where a question is submitted to a jury on which liability is predicated when there is no evidence to support it or where there is no proof that the question submitted in any way contributed to the injury sued for.

17. TRIALS: Nonsuit: Involuntary: Refusing Improper Instructions. Where plaintiff's requested instructions were too broad he cannot claim that a nonsuit which he took was involuntary because an adverse ruling by the court precluded recovery.

18. INSTRUCTIONS: Must Follow Evidence. Action by servant against master for injuries received in master's mine from falling rock. Plaintiff testified that the rock which caused his injury could not have fallen from the wall of the mine. It was proper to refuse his requested instructions which placed the liability on the ground of defendant's failure to inspect the walls of the mine and remove loose boulders therefrom.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*Horace Merritt* for appellant.

(1)   It is not the province of the trial court, after plaintiff has made out a prima-facie case, to sustain an instruction to the jury to find for defendant offered at the close of all the testimony on the ground that defendant's proof is undisputed and unimpeached, and is sufficient to overcome plaintiff's prima-facie case, etc.   Gannon v. Gas Co., 145 Mo. 502; Ward v. Steffen, 88 Mo. App. 576; O'Meara v. St. Louis Transit Co., 102 Mo. App. 211; Compton v. Railroad, 165 Mo. App. 287, 159 S. W. 843, 161 S. W. 613, 162 S. W. 286 and 685.   (2)   Though the plaintiff in action for personal injuries is contradicted by five disinterested witnesses as to facts testified by him, yet if the admitted physical

facts and circumstances corroborate him, the verdict is sufficiently supported. Cartlich v. Railroad, 129 Mo. App. 721. (3) A demurrer to the evidence admits every material fact proven, and every reasonable inference which may be drawn from the testimony to be true, and should never be sustained unless the evidence, when thus considered, fails to make proof of some essential fact. Young v. Webb City, 150 Mo. 638; First Nat'l Bank v. Simpson, 152 Mo. 638; Patton v. Morrin-Powers Mercantile Co., 231 Mo. 298. (4) It is the master's duty to warn the workman of the danger and to inform him of the conditions, and he is not relieved of that duty by the mere fact that the danger is open and obvious. Seals v. Whitney, 130 Mo. App. 412.

*H. S. Miller* for respondent.

(1) Respondent takes the position that appellant is out of court. There is nothing for this court to review. When a voluntary nonsuit is taken, the plaintiff abandons his actions and from the judgment entered no appeal will lie. Greene County Bank v. Gray, 146 Mo. 568, 570; Choteau v. Rowse, 90 Mo. 191; McClure v. Campbell, 148 Mo. 112; Kelley-Goodfellow Shoe Co. v. Prickett, 84 Mo. App. 100; Waller v. Railroad, 83 Mo. 608; Dosier v. Jerman, 30 Mo. 216; Diamond Rubber Co. v. Wermicke, 166 Mo. App. 128. (2) Even where the trial court gives a demurrer to the evidence, if appellant fails to save an exception, that ruling is not reviewable on appeal. Lewis v. Center Creek Mining Co., 199 Mo. 463; Adamson v. Railroad, 126 Mo. App. 127; Monteig v. Railroad, 130 Mo. App. 149; Allen v. Railroad, 141 Mo. App. 586; Bushyager v. Packing Co., 142 Mo. App. 311; Trabue v. United Rys. Co., 154 Mo. App. 86. (3) Negligence, like any other fact, must be proven and is never presumed. Verdicts of juries must have evidence to support them. Goransson v. Mfg. Co., 186 Mo. 307; Byerly v. Light, Power & Ice Co., 130 Mo. App. 603; Dumphy v. Stock Yards

Co., 118 Mo. App. 516; Trigg v. Ozark Co., 187 Mo. 227; Kane v. Railroad, 251 Mo. 1; Rogers v. Packing Co., 167 Mo. App. 49. (4) When the injury complained of may have resulted from either of several causes for only one of which the party sued is liable, the complainant must show with reasonable certainty that that one produced the injury. Thornberry v. Old Judge Mining Co., 126 Mo. App. 660.

FARRINGTON, J.—Plaintiff sued for $5000 as damages for personal injuries sustained while employed as a shoveler in defendant's mine.

At the close of plaintiff's evidence in chief, defendant asked and the court refused an instruction in the nature of a demurrer to the evidence. It was renewed at the close of all the evidence, at which time, according to the bill of exceptions, it was given; whereupon, the bill of exceptions recites, plaintiff took a nonsuit with leave to move to set the same aside. The appeal is taken by plaintiff from an order overruling his motion to set aside the nonsuit.

The petition charged that it was a part of plaintiff's duty in defendant's mine to shovel dirt, ore and rock into a car or tub and push the same to the shaft; that it was defendant's duty to furnish plaintiff a reasonably safe place in which to perform his duties, and to keep the drifts and shafts in a reasonably safe condition, and to inspect and trim the walls and roof of said drifts and remove therefrom all loose earth, rock and boulders; that defendant, wholly neglecting and disregarding its duties in that behalf, did, on the 5th day of October, 1912, order and direct the plaintiff to work as a shoveler in the drift of said mine, and assured the plaintiff that said drift was a safe place to work, and that plaintiff could safely enter and work therein, and that plaintiff relying upon the assurances of the agents and servants of the defendant that said drift was a safe place to work, did enter said drift

and undertook to work therein and did work therein until he was hurt and disabled as hereinafter set forth; that defendant had not inspected said roof and walls of said drift and had not removed therefrom the loose rock and boulders, and that defendant knew, or might by the exercise of ordinary care on its part have known, that said walls and roof of said drift were in a dangerous and unsafe condition, and that same contained loose rock and boulders which were liable to fall at any time, and which condition could be discovered by the plaintiff by the exercise of due caution and care on his part; that while working in said drift of said mine on October 5, 1912, plaintiff stooped over to pick up a small boulder and place same in the can, when a rock fell from the roof of said drift onto the back of plaintiff's left hand.

The plaintiff was a farmer, but had worked at mining three or four weeks the winter before. He went to work for defendant on Friday and was injured about nine o'clock Saturday morning. He inquired of the ground boss, who employed him, as to the safety of the mine "because he was scared," and was told it was "safe as any." The following are excerpts from plaintiff's testimony, this being considered the fairest way of stating the case made by him:

"I just stooped over; I cleaned the boulders off of the stope just as clean as I could get them on the stope there; and there was a little boulder on the boards and I stooped over with my head down and my hat on, my mining hat, and my lamp on my hat; and I stooped over and my light went out and also this rock hit my hand." . . . "I heard the air kind o' whiz, like; the rock never came from the stope all the way; it came from the slope part of the way, I will admit; it came from above until it hit the stope at the head of the stope; if it hadn't hit the stope it would have crushed my hand plumb off." . . . "There was a light on my hat; as near as I could tell, the wind from

this rock falling put the light out; it didn't look like the rock started from where it hit. *Mr. Miller*: We object to that as argument. *The Court*: Sustained."
. . . "I believe it was the 5th day of October last, I was hurt; I was working at bottom of stope shoveling; there is a platform of boards there; I was standing on platform and stope rises from there; I don't know about the degrees; it wasn't very steep at the bottom. Yes, sir; loose boulders would collect there occasionally. I cleaned them all off. Yes, sir; so far as I could see that was loose. I was shoveling away all the time, and Ed Peck was shoveling too, and as we shoveled from the pile the stuff would roll down above. The surface of the stope was changing some by reason of shoveling, not bad; when we shoveled a can of dirt it rolled down." . . . "Some say the drift is a hundred feet and some say it is a hundred and fifteen feet high. The stone would weigh ten to twenty pounds. All I know, I was at work shoveling and stooped over and was about to pick up a boulder and put it in the can, and while I was stooping my head was down and couldn't see upwards, and first thing I knew the boulder came down and struck my hand. I do remember testifying in Carthage. The question was asked me, 'You don't know where it came from?' and my answer was, 'I don't know for sure.'" . . . "I talked to a lady after this was all over with." . . . "I told her it came from the stope, but not direct. No, sir; I don't think I told her it didn't come from the roof; I did not tell her that. I told her if it had come from the roof direct it would have mashed my hand if it hit my hand direct; that is the understanding. Yes, I said that. No, sir; I did not tell her it rolled down the stope and came from fifteen feet up the stope; not fifteen feet, I didn't measure the distance, but it wasn't fifteen feet; if I had said that it would not have been so. I told her it came part way from stope; but did't tell McFerrin it rolled from stope, nor did I tell Mr. Devigne the same.

I told Shannon in Joplin that it came from the roof in the stope and then hit me; it hit the stope and then hit me. He is the man I tried to settle with.'' . . . ''I didn't tell any of these parties it came down the stope; if they say that they misunderstood me. I am sure I didn't say that. I said it came from the roof and hit the stope and then hit me; I told them all it came from the roof; Mr. Lawrence, Mrs. Lawrence, McFerrin—told them all it came from the roof, hit the stope and then hit me. I am clear about that and sure as near as I could tell from the actions of it; or course, I couldn't. see, you know. I didn't tell Daddy Adams that it rolled down the stope. I suppose it was eighty feet from the bottom to the top of the stope, maybe not so far.'' . . . ''The rock I had my hand on was eight or nine feet from the nearest wall of drift, I judge, so that it didn't fall out of wall on either side.'' Plaintiff also testified that defendant's ground boss told him where to work in the mine. Plaintiff started working for defendant on Friday. He testified: ''I think they had been shooting there that night; it was about 9 a. m. when I got. hurt, Saturday morning; there had been no shots after I went there; the shots that had been put off were up in the heading at the top of the stope.''

Plaintiff's witness Hughes testified that the roof of this mine was trimmed about three months before plaintiff commenced working there and that he did not know of it being inspected after that and he had worked there all the time.

The ground foreman at the time testified for *defendant* that they never made any inspection of the roof from the time they trimmed it three or four months before this accident, and that part of the roof is high and hard to get to. Also, that he told plaintiff on employing him that it was safe because he had never seen anything fall in there.

Ed Peck testified for plaintiff as follows: "I couldn't say exactly, but it sounded to me like a boulder had fell up above him there a few feet and bounced down and hit him, because if it hadn't I would have heard the warning sooner. Didn't see it and don't know where it came from." However, this witness on redirect examination stated, first in answer to a question by the court, and later in answer to a question put by plaintiff's counsel, that the stroke of one rock upon the other was all he heard.

The foregoing is a statement of the case in the manner most favorable to the plaintiff. The rules as to the rights of a party when the case turns on the propriety of the action of the trial court in giving a peremptory instruction against him are stated by us in the case of Dyer v. Cowden, 168 Mo. App. l. c. 657-659, 154 S. W. 156, where numerous authorities are cited, and are so well known that they need not again be stated.

Plaintiff testified, as we have said, that it was about eighty feet from the bottom to the top of the stope and that one couldn't see the top unless he had a light and went up there. There was no one in the vicinity of plaintiff except Ed Peck, who testified, and Daddy Adams, who was not a witness. The plaintiff went into his place of work with assurances of its safety and there was no way for him to see through the darkness and ascertain that it was a dangerous place. It stands admitted in the record because testified to by defendant's witness that this roof had not been trimmed or inspected for three or four months prior to plaintiff's injury. The plaintiff testified that the rock came from above and hit the stope and bounced so as to fall on his hand. If there had been a score of witnesses in this dungeon in plaintiff's immediate vicinity, it is highly probable that plaintiff could not have made his case any stronger except in the number of witnesses. It is true, negli-

gence, like any other fact, must be proven, and is never presumed, and verdicts must have evidence to support them. But it is also true that some cases admit of stronger and more direct proof than others, and that in applying the rules to a given case the peculiar surroundings and the difficulty of obtaining positive proof are to be taken into consideration. [Johnston v. Railroad, 150 Mo. App. l. c. 318, 130 S. W. 413.] We think there was a jury question in this case. The theory of the defense was that the boulder rolled down the stope, but there was no conclusive proof of this, the only countervailing evidence offered by defendant being the testimony of several witnesses who swore that plaintiff told them the boulder came from the stope. The jury had a right to believe or disbelieve them. Defendant also offered a written statement dated five days after the accident occurred in which these words appear: ''Boulder did not come out of roof, was up about fifteen feet on stope when it started.'' This statement was signed, ''C. Scott.'' Plaintiff at first was inclined to deny this statement because he always signed his name, ''C. L. Scott,'' but finally admitted it was his signature, saying that all he knew about what he signed was what the man read off to him. In rebuttal, he said the reason he signed the statement was that he went to settle with the insurance company and that they would give him no satisfaction. He testified that he did not read the statement, but heard it read, and, continuing, ''It is all about the same except where he says it came fifteen feet up the stope. I said it struck something between fifteen and ten feet ahead of me, as near as I can recollect; released and struck the stope and come down on my hand, is the way I told him. I don't know where it was released from; didn't make any statement of that that day. I trusted him to read it over as I had given it to him; that is just the way of it.'' However, all this was matter of defense. In passing on

187MoApp23

the action of the court in giving the peremptory instruction against plaintiff, we are not bound to assume that the statement he signed was correctly read to him, but instead must give him the benefit of every inference in his favor. The fact that several witnesses contradict plaintiff as to whether or not he made certain oral statements did not authorize the court to invade the province of the jury and decide the fact by directing a verdict for the defendant. The record discloses that Tatum, the man who secured the signed statement from plaintiff, was not a witness in the case. His partner, Shannon, was introduced as a witness, and said he was present when the exhibit was signed and that he talked with plaintiff about the accident, and that the statement was read to plaintiff after it was written by Tatum. Shannon's testimony, however, does disclose that he was not present all the time during the conversation had in the office between plaintiff and Tatum, and he does not testify that he read the statement to plaintiff or saw it when it was read. Plaintiff's testimony shows that he was in a place where the rock could not have fallen from the side walls; he says it did not roll down the stope in the manner in which dirt and rocks in a pile will roll when shoveling is going on at the base; and it is not contended that it sprang out of the ground from beneath. It was fairly a question of fact whether it came through the darkness from the roof many feet above—the roof that had not been trimmed or inspected for three or four months where shots were being fired, part of which was "high and hard to get to"—or whether it did in fact roll down the stope as defendant's witnesses claim plaintiff said it did. However, in passing on the question before us, the defendant's evidence supporting its theory is to be left entirely out of consideration. We think it a fair inference to say that the rock came from the untrimmed, uninspected roof.

The following language is used in the opinion in the case of Spencer v. Bruner, 126 Mo. App. 1. c. 104, 103 S. W. 578: "Plaintiff's cause of action is founded not only on the negligent act of defendant in failing to exercise reasonable care to provide him a reasonably safe place in which to work, but also of the negligent act of ordering an inexperienced servant to work in a place which he knew, or by the exercise of ordinary care should have known, was imminently dangerous, without informing the servant of the extent of the risk he was directed to encounter. Evidence was adduced which made each of these acts an issue of fact, and it was proper to submit both issues to the jury." In our case, the plaintiff offered and the court refused to give an instruction submitting similar issues to the jury.

This is a case that does not admit of exhaustive testimony because of the fact that the roof could not be seen and the fact that only two workmen besides plaintiff seem to have been near the place where the injury occurred. One of them (Adams), was between this place and the shaft. The other (Peck), according to plaintiff's testimony, must have been very near and yet his version of the occurrence was not helpful in arriving at the true facts. The defendant introduced no evidence to support its theory that the rock rolled down the stope as a natural result of the shoveling plaintiff had been doing at the base of the stope, except the evidence to the effect that plaintiff had told defendant's witnesses the rock came from the stope, and such evidence does not justify the trial court in saying as a matter of law that plaintiff failed to produce substantial evidence of the existence of the negligence charged. [Cartlich v. Street Ry. Co., 129 Mo. App. 1. c. 724-728, 108 S. W. 584.] As in the case just cited, the physical facts and circumstances surrounding the injury very strongly corroborate plaintiff's testimony. It is a matter of common knowledge that in caverns of this kind where shots are being fired and where the roof is of

such height that workmen cannot ascertain for themselves whether they are working in an obviously dangerous place, proper inspection should be made and trimming or brushing from time to time as needed to make it a reasonably safe place. It was fairly inferable that the negligence of the defendant in failing to inspect and trim or brush the roof at reasonable intervals was the proximate cause of plaintiff's injury. [Deweese v. The Meramec Iron Mining Co., 54 Mo. App. 1. c. 478-482; Id., 128 Mo. 423, 31 S. W. 110.] The jury could fairly infer that an ordinary inspection of the roof would have revealed the loose condition of the rock in time to have prevented it falling on the plaintiff. Upon the showing made plaintiff was entitled to have the jury decide the facts.

Respondent insists, however, that there is nothing for this court to review for the reason that plaintiff took a *voluntary* non-suit from which no appeal lies. This, because the record fails to disclose that plaintiff excepted to the action of the court in giving the peremptory instruction to return a verdict for the defendant, and therefore, the nonsuit having been voluntarily taken, the plaintiff could not appeal from the order of the trial court refusing to set the same aside. In this, respondent is sustained by the rulings of the Supreme Court and the Courts of Appeals of this State. Therefore, without any expression as to what the views of this court may be on the subject, we follow the last controlling decision of the Supreme Court. In the case of Lewis v. Center Creek Mining Co., 199 Mo. 463, 97 S. W. 938, the court said (1. c. 469): "Suppose that the court had in fact given the instruction and the record fa'led, as it does now, to show an exception, could it be said in the face of our holdings for many years, that the instruction or the questions raised thereby could be here for review? We think not." [See, also: Green v. Terminal R. R. Assn., 211 Mo. 1. c. 34, 109 S. W. 715; Arnold v. Aetna Life Ins. Co., 167

Mo. App. 154, 151 S. W. 190; Thaler v. Niedermeyer, 185 Mo. App. 250, 170 S. W. l. c. 381, 382; Carter v. O'Neill, 102 Mo. App. l. c. 394, 76 S. W. 717; McClure v. Campbell, 148 Mo. l. c. 112, 49 S. W. 881; Montei v. Railroad, 130 Mo. App. 149, 108 S. W. 1073; and Pettis County v. DeBold, 136 Mo. App. l. c. 272, 117 S. W. 88.]

The fact that the appellant in his printed abstract designates the nonsuit as "voluntary" would not make it such if the facts disclosed that it was in truth involuntary. Courts look to substance rather than form.

Appellant files a motion in this court for a rule on the stenographer who took the notes in the trial court to supply the omitted record which he says shows that an exception was in fact saved. Appellant misconstrues what the "record" is in this court. The "record" of the case as to all those matters that must be in the bill of exceptions is made for the appellate court when the trial judge certifies that the transcript of the evidence and proceedings at the trial, made up by the stenographer and agreed on by the attorneys, is correct; by his signature he makes the record as to that for the first time in the case for the appellate court. Should the printed abstract fail to show something which is shown by the bill of exceptions on file, then we can act on a motion suggesting a diminution of the record; but the original bill of exceptions on file cannot be amended in the appellate court. [Holt v. Simmons, 14 Mo. App. 450.] As to this both the majority and dissenting opinions in the case just cited agree. [See, also: West v. Burney, 71 Mo. App. l. c. 273, 274; Crossland v. Admire, 149 Mo. l. c. 655, 51 S. W. 463.]

Appellant, however, raises the point—and we agree with him as to the rule—that where a plaintiff presents correct instructions to the trial court going to the vitals of his case which should be given by the court but are refused, to which refusal he does except and makes his record show the exception, the action

of the trial court thereby forces him to suffer an involuntary nonsuit, and this, even though his record does fail to show the giving of a peremptory instrucat the same time or afterwards against him. A plaintiff's nonsuit is involuntary when taken after an adverse ruling has been made on all his requests for correct instructions, to which ruling he excepted. A nonsu't is involuntary when taken after the court has made a ruling which precludes the plaintiff from any substantial recovery. This goes to the rulings on evidence as well as on instructions. We can conceive of no ruling that would be more preclusive of a plaintiff's recovery than for the court to refuse to submit the issues to the jury on instructions which correctly state the law of the case with respect to the facts in evidence. The refusal of all of plaintiff's instructions in the case under consideration was tantamount to the giving of a peremptory instruction against him, provided his instruction correctly declared the law of the case with respect to the evidence adduced. It is held in Martin v. Fewell, 79 Mo. l. c. 409, that although plaintiff be given two instructions upon which, standing alone, he could recover, still the court by giving instructions for the defendant which neutralized plaintiff's instructions and prevented a recovery rendered plaintiff's nonsuit taken after such action involuntary. It is said in the case of Dumey v. Schoeffler, 20 Mo. 323, 324: "In cases where the giving or refusing to give instructions may affect the party's right to maintain his action, there the ruling of the court may force a party to take a nonsuit." It is held in Chiles v. Wallace, 83 Mo. 84, that a party is not forced to a nonsuit by an instruction merely affecting the measure of his damages, and that so long as the rulings of the court leave him a substantial causes of action, his withdrawal from the court is his own act and deprives him of the right of appeal. In Pettis County v. DeBold, 136 Mo. App. 265, 117 S. W. 88, it is held that by refusing a plaintiff's

offer of certain evidence vital to a recovery, to which ruling plaintiff saved an exception, and afterwards no proper exception was taken as to the peremptory instruction, a recovery was precluded, and that plaintiff was entitled to take a nonsuit which could be termed none other than involuntary. In Diamond Rubber Co. v. Wernicke, 166 Mo. App. 128, 148 S. W. 160, it is said that. "an involuntary nonsuit is when the plaintiff by some adverse ruling of the court which precludes his recovery is compelled to take a nonsuit." [See, also: Grattan v. Suedmeyer, 144 Mo. App. l. c. 725, 129 S. W. 1038; Bushyager v. Packing Co., 142 Mo. App. l. c. 313, 126 S. W. 985.] However, the plaintiff in our case is not in position to take advantage of the rule announced for the reason that his instructions (numbered 2, 4 and 5) which submit the question of liability and which were refused, were broader than the facts proven, and hence were properly refused. Plaintiff swore positively that the rock could not have fallen from the walls of the mine; yet in these requested instructions liability is time and again predicated on the hypothesis that defendant had failed in its duty to inspect the walls and remove loose boulders. from the walls. The instructions, therefore, permitted a recovery by plaintiff if the jury should find that the defendant had been remiss in some duty concerning the walls when there is not a scintilla of evidence that there could have been any causal connection between the injury and a failure to inspect and clear the walls of the mine of boulders. It is error to submit a question to the jury on which liability is predicated when there is no evidence to support it, or when there is no proof that the question submitted in any way contributed to the injury sued for. [Small v. Ice & Fuel Co., 179 Mo. App. l. c. 465, 162 S. W. 709, and cases cited; Degonia v. Railroad, 224 Mo. l. c. 589, 123 S. W. 807.] Though we might say, had the instructions requested by plaintiff in our case been given and the jury re-

turned a verdict for the plaintiff, that the error of including the walls in the instructions could not under the evidence have misled the jury, there being no contest between the parties as to the walls, and hence not reversible error, still, where it should not have been included in the instructions we cannot say that the trial court erred in refusing them with that error in them. We must therefore hold that the trial court did not commit error in refusing plaintiff's instructions, and that plaintiff's exception to such rulings cannot be the basis of an involuntary nonsuit, and that his failure to except to the giving of the peremptory instruction deprives him of the right to have the action of the trial court reviewed here. No substantial injustice can result to him from this enforcement of the rule laid down by the Supreme Court for our guidance. He is substantially in the same position so far as ultimately securing a trial on the merits of his case as if he had secured an order here remanding the cause, having taken a nonsuit and his cause of action not being barred by limitation.

The judgment of the trial court refusing to set aside plaintiff's nonsuit is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.